```
            FILED      LODGED
            RECEIVED   COPY
              NOV 1 2 2009
         CLERK U S DISTRICT COURT
           DISTRICT OF ARIZONA
         BY_____ DEPUTY
```

John R. Quain
4536 East Rowel Rd.
PHOENIX Az. 85050

Federal Court 9th District

| | |
|---|---|
| John R. Quain, | ) Case No. |
| Plaintiff, | ) |
| vs. | ) |
| Clear Channel Communications | ) CV 09 2365 PHX DGC |
| Inc. KYOT Radio; Russ Egan, | ) |
| Program Director | ) |
| Defendant | ) |

In the Matter of Quain v Clear Channel Communications, KYOT Radio, Russ Egan et al.

Abbreviations:

Clear Channel Communications, CCC

Federal Communications Commission, FCC

Nobody In Particular Presents, NIPP

Compact Disc, CD

### Facts

On 1/22/2009 John R. Quain owner of Silk Purse Records and leader of the musical group Citizen Quain based in Arizona contacted Russ Egan program director for KYOT Radio a property of Clear Channel Communications doing business in Phoenix AZ. In a telephone conversation Quain informed Egan that he had recently completed a CD in Arizona employing 18 local musicians at a number of local recording facilities.

On 1/23/2009 Quain delivered to the offices of KYOT a

[Summary of pleading] - 1

1  promotional package consisting of five CD's and a proposal to
2  sponsor events, concerts and prizes tied to the CD's release.
3  Quain needed to purchase advertising with KYOT and possible
4  cooperative advertising with local companies. The proposals were
5  within the guidelines dictated by the Federal Communications
6  Commission.

   First Cause of Action Antitrust

8  On 2/23/2009 the plaintiff received an email response from
9  Egan stating KYOT would not cooperate in efforts to promote
10 locally produced music. In a subsequent telephone conversation
11 between Quain and Egan on 2/23/2009 Egan emphatically stated "we
12 only play major label releases" or songs with a referral from
13 Musical Architecture or another firm unfamiliar to the
14 plaintiff. Plaintiff alleges these statements are indicative of
15 the illegal boycotting of local labels a violation of the
16 *Sherman Antitrust Act 1.2. & Consent Decree*

   2nd Cause Extortion

18 Plaintiff understood the requirement of association with a
19 major label or record consultant to secure airplay was for the
20 purposes of facilitating pay for play or payola. Plaintiff
21 requests the Court take judicial notice of *Nobody in Par. v*
22 *Clear Channel* Communs. 311F Supp 2d {D,Colo.2004] The Court was
23 required to address the unusual question of whether a black
24 market can constitute a relevant market for antitrust purposes
25 and held that it could. The Court held there was sufficient
26 evidence for a reasonable jury to conclude that payola and other
27 forms of pay for play existed in the black market. *"this court*
28 *is confident that antitrust law was not enacted to protect a*
   *competitor in another, legal market."* The plaintiff not willing

[Summary of pleading] - 2

to engage in the widely recognized black market considered the requirement of association with a label or promoter as extortion in violation of the *Title 18 US code 1961-1968 & Sherman Antitrust 2. Hobbs Act.*

### 3rd Vertical Monopoly {A}

On 2/17/2009 Quain sent a letter to the legal dept. of CCC informing them of the above violations and pointing out how the proposal presented to Egan would in part bring them into compliance with the consent decree governing the operation of their stations. A further request regarding the purchase of ads was contained in the missive.

During the first two weeks of January 2009 Quain left two messages for the promotions director of KYOT neither call was returned. In all Quain made four attempts to purchase promotional advertising with KYOT all were rebuffed.

Quain requests the Court take judicial notice of *NIPP V CCC* the Judge stated "Clear *Channel had intended to create a monopoly position when it rejected paid* advertising *by NIPP.*" By refusing to deal with Quain CCC continues a pattern and practice of colluding with the major labels to deprive competitors of the *Essential Facilities* necessary to the distribution goods. The airways are no less essential to the distribution music than the railroads to the distribution of goods. United States v Terminal Railroad Ass'n. U S 383{1912}

### Vertical Monopoly [B]

CCC controls 7 stations in Phoenix Az. and 7 Stations in Tucson Az. In NIPP v CCC the Court found CCC controlled 66% of the relevant musical format thus the intent to monopolize. In Arizona CCC controls 100% of the relevant format.  Quain

[Summary of pleading] - 3

contends KYOT is *the* only contemporary jazz station in Arizona and monopolizes the sole means of dissemination for contemporary jazz via Arizona's airways.

### Vertical Monopoly [C]

CCC is active in the promotion of contemporary jazz concerts often featuring musicians employed by or associated with CCC. The refusal to deal with Quain assures CCC of a vertical monopoly denying access to the relevant audience thus restraining a competitors ability to compete in the live performance market where CCC maintains a dominate position in the musical genre. CCC maintains market dominance and defacto pricing patterns by thwarting competition. *Brown Shoe Company v United States* 370 U.S. 294 [1962].

### 4th Breach of Contract

On April 13, 2007 Clear Channel Communications, CBS Radio Inc. and Citadel Broadcasting entered into consent decrees with the FCC governing the manner in which they would conduct business and supervise their employees. The decree resulted from FCC findings of systemic violations of pay for play creating a black market for airplay on their stations.

The FCC negotiated on behalf of citizens in general and independent record labels & independent artists specifically. Ostensibly representing Quain's interests in a global settlement of numerous violations among CCC's 1200+ stations. CCC had violations of sponsorship identification requirements {payola} set forth in Sec.317 & 507 of the Communications Act of 1934, as amended {the act*} and 73.1212 of the FCC Rules. The FCC granted immunity from complaints by third parties prior to the adopted decree.

In Attachment B "*Company Business Reforms*" CCC agreed to pay a fine of $3,500,000.00 and from the attached statements of the Commissioners "*Make airtime available to independent artists.*"

Commissioner Tate, "*They have also committed to provide 8,400 half hours blocks of airtime to independent music, to the benefit of all.*"

Commissioner Robert Mc Dowell, "*I am also pleased to hear that the companies have voluntarily committed to take additional actions, including 4,000 hours of programming featuring local and independent artists and endorsing the rules of engagement regarding the interactions between their stations and record labels to improve the ability of new and emerging artists to have their music aired.*"

Commissioner Jonathan Edelstein "*Each company's commitment to show case the talent of local and independent artists for more than 4,000 hours indicates to localism, music diversity, and all the public interest.*"

The companies accepted the terms annunciated by the Commissioners with a commitment of a least a minimum 4,000 hours of airplay for "independents." In Arizona alone CCC controls two hundred and forty-five thousand, two hundred & eighty *{245,280}* half hour blocks of programming per year.

In 2009 The Future of Music Coalition reviewed four years [2005-2008] of national playlist data licensed from Mediaguide and concluded "*almost no measurable change in play lists over the four years.*" Plaintiff's request for 1 out of 245,280 ½ hour blocks was incontrovertibly reasonable.

The companies did not contest the Commissions terms and conditions in the time allotted and the decree was and is enforce.

The plaintiff asserts the FCC for all intents a purposes acted as agent for Silk Purse Records and Citizen Quain and CCC was contractually obligated to make airtime available consistent with their practice of introducing their own artists releases.

### 4th Misrepresentation:

The absence of language specific to accessing airplay for independents requires a good faith effort on the part of the defendant. The plaintiff claims the actions of CCC are demonstrative by design and intention of bad faith.

### 5th Fraudulent Inducement:

In the latter part of 2007 Sept.-Oct. Quain became aware of the consent decree and CCC's obligations therein and in Dec. of 2007 production began on Citizen Quain Hits Vol.1. The defendant's acceptance of the language contained in the consent decree could only result in the expectation that independent parties would expend resources in expectation of airplay.

### 6th Breach of Local Interest:

*The Communications Act of 1934* mandates "Broadcasting serve the Public Interest Convenience and Necessity" by design this mandate was constructed to allow succeeding generations their own construct of what constitutes the Public's Interest, Convenience and Necessity. The FCC was charged with regulation and enforcement.

Payola was first recognized as contrary to the public interest at the inception of broadcasting though not acted until the 1950's and as recently as 2007 the FCC and Courts have

acknowledged that payola is systemic and has flourished in various forms for over fifty years. The Declarations of the Federal Communications Commissioners the Administrative Governing Authority are plainly stated "The Public Interest" requires local artists be granted access to local airways.

In the local and public interest the plaintiff prays the Court take notice and recognize The Blues, Jazz, Rock'n'Roll, Country and many other styles of music are unique original American art forms and as such are afforded greater significance than other commodities {pork bellies} thus <u>The Communications Act of 1934</u> mandates that music be played based on artistic merit.

Citizen Quain is not alone there are other independent artists who will not deal with the major labels who turn your creations into works for hire. The concept of "selling out" meaning you no longer retain the rights to your own name, image or work is repugnant to many self respecting artists. Being compelled to pay consultants for their surreptitious talents is equally repulsive. Music is not the product of radio conglomerates radio exploits music to sell advertising. Record labels market and distribute music they don't create it together they have a long history of controling access to the marketplace for their mutual benefit to the detriment of artists and competition. There is no free market for artists not in servitude to the major labels colluding with radio companies to limit artistic expression and minimize compensation.

All markets seek efficiency and it is not practical to solicit payola individually from independents when labels engage in global corruption.

7th Localism:

Phoenix possesses unique qualities of sufficient size and demographics to serve as an incubator for independent artists and labels while still affording reasonable rates for multimedia promotional campaign expenditures as envisioned by the FCC.

The plaintiffs business has been interfered with depriving him of the good will engendered by the 18 local musicians and their thousands of live local performances creating a fan base for Citizen Quain's products.

Between thirty-five and forty local artists and artisans were employed at an average compensation of fifty dollars per hour. These local citizens will be denied future employment if denial to the marketplace is allowed subverting the FCC's mandate of localism. This local project employed 5 sound recording studios, 1 mastering studio, 2 video studios, 1 duplication facility, 2 photography studios, 3 information technology firms. Additional thousands were spent on food lodging and transportation. Local firms were used in the production of commercials to be run in print, TV and radio ads however they are only supplemental promotions predicated on local airplay without airplay their effectiveness warrants termination of further local expenditures.

Representation/Class Standing

The Corporate Parties and The Federal Communications Commission both having access to the best legal minds choose to use the generic terms "independent artist" and "independent record label" language so broad it would be virtually impossible to exclude the plaintiff from membership of said Class.

The plaintiff prays the Court recognize Quain as "Interim Class Counsel" under Rules of Civil Produce IV Parties Rule 23[g] Class Counsel [3]., Subject to timely replacement by qualified Class Counsel representation.

Summary:

The statistical data shows the defendant in violation of Sherman 1.2. in furtherance of maintaining monopolistic control. If the defendants' market dominance was the result of natural forces, dealing with Quain would have been a welcome event a new cash client in the mist of their worst sales slump ever. Turning away new clients is illogical unless unseen forces are at play.

Holding a license to operate a radio station occupying public bandwidth like any occupancy comes with terms and conditions. A tenant can alter a space to suit their needs but cannot replace the landlord's quality fixtures with shoddy goods and profit from the conversion just as payola is a bribe to substitute inferior goods into our musical marketplace and culture. Even when illegal practices are curtailed or stopped the parties are bound by their mendacity. The FCC has no authority to grant amnesty to individuals criminally engaged in payola or the evasion of taxes on ill gotten gains. The parties have a vested interest in maintaining the status quo under threat of mutual blackmail resulting in further damage to our music and culture.

Motion for Judicial Notice

The plaintiff notes the introduction of the findings of the 8th Circuit are at the discretion of the Court and requests consideration of these facts: The ascendency of Clear Channels market dominance did not occur until circa 2004 after the

1  earlier lifting of ownership restrictions thus creating
2  uncharted legal territory.
3      Too assist in the efficient use of the courts time in
4  findings of fact regarding the defendants corporate conduct
5  which when viewed in totality reflects a corporate culture not
6  the isolated acts of individuals.
7      The Ninth Circuit Judicial Council has recognized and the
8  plaintiff acknowledges there are "procedural nuances" a
9  reasonable person could not be expected to deduce independently
10 and is reliant on judicial guidance as articulated in The Ninth
11 Circuit Task Force on Self Represented Litigants.
12     If the public ownership of the airways is more than a
13 hackneyed phrase used by politicians then it is time for a jury
14 of citizens to assert their ownership rights as stakeholders and
15 determine if Clear Channel Communications has met its
16 obligations. Or has Clear Channel Communications Inc. damaged
17 Citizen Quain, Silk Purse Records and similarly situated
18 independent artists and labels to the detriment of all society.
19    Plaintiff seeks all relief to which entitled.

**Demand for Jury Trial**

Plaintiff _[signature]_  Date _11-12-2009_

John R. Quain dba Citizen Quain